## Case No. 6,100.

### The HARRIET.

[1 Ware (343), 348.]¹

District Court, D. Maine. June Term, 1836.²

BOUNTY FOR FISHING VESSELS — FRAUD — FORFEITURE OF VESSEL—MISTAKE IN CERTIFICATE.

1. The forfeiture provided by the act of July 29th, 1813 [3 Stat. 49], for fraudulently obtaining the bounty allowed to fishing vessels, at-

taches only when there is actual fraud and deceit used in obtaining it.

[Cited in U. S. v. The Reindeer, Case No. 16,-145.]

2. If the certificate stating the days which she was employed, and verified by the oath of the owner, is proved to be false, it is prima facie, but not conclusive evidence of fraud and deceit. The owner is not precluded from showing that the errors of the certificate arose from an innocent mistake.

3. If the errors of the certificate are proved to have arisen from mistake, without fraud, the owner may, to avoid a forfeiture, show that the vessel was employed on other days than those named in the certificate.

This was a libel filed by the district attorney on behalf of the United States, against the schooner Harriet [Boynton and others, claimants], of about twenty-four tons burden, for an alleged forfeiture in fraudulently obtaining the fishing bounty. The Harriet was regularly enrolled and licensed for carrying on the bank and other cod-fisheries, for the year 1833, when the forfeiture is alleged to have accrued. A large number of witnesses were examined at the hearing, but the material facts are stated in the opinion of the court.

Mr. Anderson, Dist. Atty., for the United States.

C. S. Daveis, for claimant.

WARE, District Judge. To entitle a vessel, licensed for the cod-fisheries, to the bounty provided by the laws of the United States, it is required that she shall be actually employed in fishing for four months, during the fishing season, which, by the act of July 29th, 1813, is declared to commence from the last of February, and terminate the last of November. The seventh section of the act provides that the owner of any fishing vessel of twenty tons or over, or his agent, shall, before receiving the bounty, produce to the collector, who is authorized to pay it, the original agreement made with the fishermen employed, and also a certificate to be by him subscribed, stating "the particular days on which such vessel sailed and returned on the several voyages or fares which may have been made in the preceding fishing season, to the truth of which he shall swear or affirm before the said collector." The original agreement of the fishermen was produced, and also the certificate required by the law, which were sworn to by Leander Miller, as the lawful agent of the vessel. The certificate states the number of fares, and the day of sailing and returning on each. The total of the several fares, as they are carried out in the certificate, is 131 days of actual employment. But there is a manifest error of computation, of ten days, on the face of the certificate. The eleventh fare, according to the certificate, commenced August the 26th, and terminated by the return of the vessel into port on the first of September. This is carried out sixteen days. Now excluding one day for sailing and returning, and

---

¹ [Reported by Hon. Ashur Ware, District Judge.]

² [Affirmed in Case No. 6,099.]

here are but six days of actual employment. Deducting these ten days from the total, and there remain but 121 days, only one day over four months. According to the certificate, she commenced fishing on the 7th of May, and ended on the 29th of October. In this period she is represented as having made nineteen fares, amounting as corrected to 121 days. Now it is satisfactorily proved that she was actually in port between thirty and forty days when the certificate represents her to have been employed in fishing. The certificate, therefore, sworn to by the agent, is proved beyond a doubt to be grossly incorrect.

The incorrectness of the certificate is admitted on the part of the claimant, but it is denied that this is conclusive evidence of fraud. It is contended that he is not precluded from showing how the certificate happened to be erroneously made out, and that the vessel was actually employed in fishing the whole time required by law; that the bounty was fairly earned, and honestly received. On the other hand, it is argued by the district attorney that the claimant is not admitted to show that the vessel was employed on any other days than those included in the certificate and sworn to by the agent of the vessel; that the sworn certificate being falsified, fraud is to be inferred as a presumption of law, and condemnation follows of course. My opinion is, that the claimant is not absolutely precluded from showing that the vessel was employed at other times than those specified in the certificate. The certificate which the law requires is not the original journal or log-book of the vessel, in which the entries are made at the time. If it were, it would certainly be difficult to admit any evidence to contradict the entries which were made from day to day during the employment of the vessel. The certificate ought to be an exact transcript of this journal, so far as relates to the days of sailing and returning. But if, in copying from the original journal or memoranda, an error should be made, I can see no reason why the claimant should not be permitted to show that the error was accidental, and therefore innocent. To hold such an error conclusive proof of fraud, would be giving to the law a construction of extraordinary strictness, and in a statute so highly penal, not warranted, unless the words of the act clearly require it. The sixth section of the act, which is the penal section, provides that "if it shall appear that any fraud or deceit has been practised in obtaining the same, (the bounty,) the boat or vessel on which such allowance has been paid, shall be forfeited; otherwise the owner or owners, having practised such fraud or deceit, shall forfeit and pay one hundred dollars." This language clearly excludes the idea that it was intended to annex the forfeiture and penalty to a mere legal and presumptive fraud. It distinctly implies that there must be intentional fraud or actual deceit. It would be confounding the meaning of terms to call a simple mistake, in-

nocently made, fraud or deceit. If the claimant is permitted to show an error in the certificate, it seems to follow, as a natural inference, that he may, to avoid a forfeiture, prove that the vessel was employed on other days than those mentioned in the certificate. But in order to let in this evidence it ought to be made clearly to appear that the error in the certificate was innocently made, and not with any fraudulent design; and to exempt the vessel from forfeiture, the proof of her employment for the requisite time ought to be full and entirely satisfactory. When the certificate has been falsified by satisfactory proof, and the vessel shown not to have been employed, within the period in which that represents her to have been employed, the time required to entitle her to the bounty, the government has made out undoubtedly a prima facie case of forfeiture, the burden of proof is then shifted on the claimant, and condemnation will follow unless he can show by satisfactory evidence that the vessel has actually been employed the time required by law. Ten Hogsheads of Rum [Case No. 13,830].

To explain the error of the certificate the claimant called George Miller, at that time an inspector of the customs at St. George, who says that he made out the certificate from a journal kept in an almanac, in which the days of sailing and returning were marked; that in making the certificate, he had no reference to the particular days of sailing and returning, to the time she was out in each trip, nor to the number of fares made, but that he took the aggregate of the whole time she was out, divided it into a convenient number of fares according to the size of the blank with which he was furnished, and entered them accordingly, taking care that the whole number of days expressed by the certificate should correspond with the whole number in the almanac. It is not a little singular that any man should suppose that this could be a correct mode of making the certificate when in the certificate itself the agent swears that it truly gives not only the time actually employed, but also the true time of her sailing and returning. It is more so, that an officer of the customs should entertain such an opinion, as, if the certificate does not purport to state the time when the vessel was at sea, the collector is deprived of one of the most efficient checks which he can apply to prevent frauds in obtaining the fishing bounty. The inspectors are directed by the collector, whenever they see a fishing vessel in port, to make a memorandum of the day, and at the close of the season these memoranda are sent to him. When the fishermen apply for their bounty he compares these with the certificate of the days in which they claim to have been at sea, and these journals of the inspectors thus operate as an important check against any fraud which the fishermen may be disposed to practise. But if the certificates do not profess to state

truly the days when the vessel was at sea, it is obvious that information of this kind can be of little use. In fact, it would be just as well to aver in the certificate that the vessel had been employed four months in the fishing season, without stating any particular time. If the bounty is to be paid on such a certificate, it will be nearly impossible, in any case, for the government to detect a fraud. The fishing season includes nine months, from the last of February to the last of November. To convict a vessel, then, of fraudulently claiming for more time than she had been actually employed, it would be necessary for the government to prove negatively that for more than five months she had not been employed in fishing.

When the bounty is paid on a certificate, such as this now appears to be, giving no information as to the particular time when the vessel was employed, it presents a case certainly very much calculated to awaken suspicion. In the present instance, this does not lead to suspicion of fraud on the part of the claimant, for it does not appear that he had any knowledge of the manner in which the certificate was made. On the contrary, the fair presumption from the evidence, is, that he was ignorant of it. But it was well known to his agent, and, in a legal point of view, the act of the agent is the act of the principal. And at any rate it imposes on the court the duty of carefully examining the evidence produced to clear the vessel from a forfeiture. The journal or almanac from which Miller says he made the certificate, has been produced before the court. The first remark which naturally occurs upon it, is, that it is not a journal kept by the skipper, but by one of the men. Parsons, the man who kept the journal, says that it was not kept with a view of its being used in obtaining the bounty, but merely for his own private satisfaction. It does not appear that the skipper kept any account of the time that the vessel was employed. None has been produced, and if he did keep one, as was his duty, it is not a little remarkable that it was not exhibited at the hearing. It was from the journal of Parsons, such as it is, that Miller made out the certificate; but when it is examined it is found not to agree with the certificate in any one particular, except in the day upon which the vessel began her employment. It not only differs in the number of fares, the times when they were made, and the period at which the employment terminated, but also in the aggregate of the whole time. According to the certificate the vessel made nineteen fares, and was employed one hundred and thirty-one days, or, after the correction is made by the deduction of ten days, one hundred and twenty-one days. According to the journal of Parsons, she made twenty-one fares, and, including both the day of sailing and that of returning, she was employed one hundred and thirty-three days; but excluding one of these days from each trip, she was actually employed but one hundred and twelve days. It is not easy to comprehend upon what principle this certificate was made, if it was founded on this journal. The customary mode of computing the time, which is well understood by the fishermen, is to deduct one day from each fare for sailing and returning to port. That it was so understood by the parties in this case, appears from the certificate itself, as the time is carried out with a deduction of one day for each fare. Parsons indeed stated that he did not in all cases mark the days on which they sailed and returned, but that if they left port in the afternoon, or returned in the morning, these were not marked as days employed in fishing. But he does not state in how many instances this occurred, and I see no sufficient reason why, in computing the time from this journal, we should depart from the established usage. The journal of Parsons, with all the aid derived from his own explanation on the stand, not only fails of proving an employment for the time required to entitle the vessel to the bounty, but, computing the time according to the universal practice, it proves negatively that she was not employed that time. I have thus far gone upon the principle that this journal, aided by his examination under oath, is entitled to full credit; or rather that he might be admitted as a witness to prove the time that the vessel was employed, and that these memoranda, which he swears were made at the time, might be used to aid his recollection; for the journal, per se, is clearly not evidence. But in point of fact, if full credit is to be given to Miller, this journal is proved to be so incorrect as to be inadmissible for any purpose. Miller, as an inspector, kept a journal himself, which at the close of the fishing season he returned to the collector. In that journal he had marked this vessel as in port five days, when, according to Parsons' journal, she was at sea. And independent of Miller's testimony, she is proved to have been in port several other days, when according to this journal she was fishing. As the claimant has failed in proving that the Harriet was employed four months in fishing, there must be a decree of condemnation.

[On appeal to the circuit court, the decree of the district court was affirmed, with costs. See Case No. 6,099.]

HARRIET, The (COLEMAN v.). See Case No. 2,982.

HARRIET, The (MOODIE v.). See Case No. 9,744.